**Timothy JARRETT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 49A05–0306–CR–283.

Court of Appeals of Indiana.

March 11, 2004.

Transfer Granted June 3, 2004.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathyrn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a bench trial, Timothy Jarrett was found guilty of Domestic Battery as a Class A misdemeanor,[1] Battery as a Class A misdemeanor,[2] and Battery as a Class D felony.[3] The three counts were "merged" because of double jeopardy considerations, and the trial court sentenced Jarrett on one count. Upon appeal, Jarrett presents three issues for our review:

I. Whether he was sentenced for the proper conviction;

II. Whether the evidence was sufficient to support his conviction; and

III. Whether the trial court properly entered a no contact order.

We affirm.

The facts reveal that Jarrett was arrested as a result of a fight which he had with his ex-wife, Denise. Jarrett and Denise were married from 1990–1994. During that time they had a daughter. In 2001, Jarrett moved into the home of Denise and their daughter after he was released from prison. On June 18, 2001, Denise arrived home after working the third shift. She and Jarrett began to argue, which led to a

---

1. Ind.Code § 35–42–2–1.3 (Burns Code Ed. Supp.2003).

2. Ind.Code § 35–42–2–1(a)(1)(A) (Burns Code Ed. Supp.2003).

3. I.C. § 35–42–2–1(a)(2)(D).

physical altercation. During the argument, Jarrett pulled the telephone receiver from the wall when Denise attempted to call the police. Jarrett also grabbed Denise around the neck from behind and choked her. Denise, in an effort to free herself, pushed Jarrett into the wall. She then pushed him backward, and they both fell onto a glass top coffee table. Denise was able to break free and ran upstairs to use the cordless telephone to call the police. Jarrett fled the house.

Three months after the incident, Jarrett was charged with four counts: Count I, criminal confinement as a Class D felony; Count II, domestic battery as a Class A misdemeanor; Count III, battery as a Class A misdemeanor; and Count IV, criminal mischief as a Class B misdemeanor. The State also filed a supplemental part to Count III, which elevated the charge of battery to a Class D felony because Jarrett had previously been convicted of a battery against Denise. A bifurcated trial was held in which the State presented evidence in regard to all four counts, with the exception of Part II of Count III. Jarrett was found guilty of domestic battery and battery but not guilty of criminal confinement or criminal mischief. The State did not present any evidence of Jarrett's prior conviction for battery until after the trial court found Jarrett guilty of domestic battery and battery. Following the presentation of evidence on the prior conviction, the trial court found Jarrett to be guilty of the elevated battery charge. The trial court informed the parties that the computer program used by the court may list the enhancement charge for battery as a separate count, which in this case would be Count V.[4] Nonetheless, the trial court clearly stated for the record that the en-

hancement was related to Count III, the charge for battery.

At sentencing, the trial court referred to the convictions as Count II, Count III, and Count V. The trial court stated that he had vacated Count III and that all three counts merged. The trial court noted that Count V was battery as a Class D felony. The trial court then sentenced Jarrett to three years executed with no time suspended. As an additional part of his sentence and upon request by the State, the trial court ordered that Jarrett was to have no contact with Denise, which included a prohibition on Jarrett writing letters to his daughter and sending them to Denise's home.

I

*Sentencing on Proper Conviction*

Jarrett claims that the trial court sentenced him on domestic battery as a Class D felony. He asserts that this is error because he was never charged with domestic battery as a Class D felony. As a result, he requests that the record be corrected so that it shows the he was convicted of domestic battery as a Class A misdemeanor and that he be sentenced accordingly. To support his assertion that he was incorrectly sentenced, he relies upon the trial court's statement that Count III was vacated. Further, he notes that the chronological case summary ("CCS") states that Count III was merged into Count II and that Count V is a charge enhancement for Count II, domestic battery. Finally, he notes that the comments on the abstract of judgment state that Count V is the charge enhancement of Count II, domestic battery as a Class A misdemeanor.

4. A computer programming change would seem to be in order.

■ Jarrett's claim fails because the record shows that he was appropriately sentenced for his conviction for battery as a Class D felony. Nonetheless, his claim points to errors on the CCS and abstract of judgment which must be corrected. The trial court's statements after the bench trial and at sentencing indicate that the trial court intended to sentence Jarrett for his highest conviction, which was battery as a Class D felony. According to the abstract of judgment, judgment of conviction was entered upon only the charge of battery as a Class D felony. The abstract of judgment showed that conviction to be for Count V, which the trial court earlier explained was Part II of Count III. Consequently, Jarrett was sentenced for a crime for which he was charged and convicted. However, we remand to the trial court to correct the abstract of judgment and CCS to indicate that Count V, battery as a Class D felony, is the charge enhancement for Count III, battery as a Class A misdemeanor.

## II

### Sufficiency of the Evidence

■ Jarrett also claims that the evidence was insufficient to support the trial court's finding that the battery resulted in bodily injury. He asserts that the photographic evidence which was admitted to show Denise's injuries do not reveal any injuries, only smeared blood which he asserts came from the injuries he suffered when he crashed into the coffee table. Additionally, he claims that Denise's testimony was incredibly dubious.

Our standard of review for a sufficiency of the evidence claim is well settled. We will not reweigh the evidence or judge the credibility of the witnesses. *VanMatre v. State*, 714 N.E.2d 655, 657–58 (Ind.Ct.App. 1999). We will consider only the evidence which supports the conviction and any rea-

sonable inferences which the trier of fact may have drawn from the evidence. *Id.* at 657. We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* at 658. Reasonable doubt is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence. *Chambers v. State*, 551 N.E.2d 1154, 1156 (Ind.Ct.App. 1990).

■ We will not impinge upon the trial court's resolution with regard to the credibility of witnesses unless confronted with testimony of inherent improbability, or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *See Heeter v. State*, 661 N.E.2d 612, 615 (Ind.Ct.App.1996). A conviction will be overturned only where a victim's testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. *Id.*

Jarrett's claim regarding the sufficiency of the evidence is nothing more than a request that we reweigh the evidence. It is true that the photographs do not depict large wounds suffered by Denise during the altercation. Denise admitted that the cuts she suffered were not large enough that they required that she receive stitches. However, the cuts sustained did constitute bodily injury. Additionally, Denise testified that she received injuries other than the cuts. She stated during trial that she had bruises on her neck, body, and legs. From this the trial court justifiably concluded beyond a reasonable doubt that Denise suffered bodily injury.

■ Jarrett's claim that Denise's testimony was incredibly dubious is also unavailing. Denise testified to the events of

the altercation as she recalled them. Her recount of the evening was entirely plausible and supported by the photographs. Just because the pictures admitted at trial do not show severe injuries or bruising, we will not conclude that her testimony was inherently improbable and runs counter to human experience.

## III

### No Contact Order

The final argument presented by Jarrett challenges the propriety of the trial court's order that Jarrett was to have no contact with Denise, which also prevented him from sending letters to his eight-year-old daughter at Denise's residence. The record reflects that following trial, but prior to sentencing, the trial court ordered that Jarrett was to have no contact with Denise. At the sentencing hearing Denise testified that Jarrett had sent letters to her home after the no contact order but that she had thrown them away. After the trial court sentenced Jarrett to the Department of Correction, the prosecutor requested that the no contact order be placed into effect during Jarrett's incarceration. The trial court ordered that Jarrett was to have no contact with Denise, including sending letters to his daughter at Denise's residence.

Jarrett claims that the trial court had no authority to enter the no contact order because the sentencing statutes do not give the trial court such authority. Further, he claims that even if the trial court appropriately ordered that he have no contact with Denise, the trial court could not order that he not contact his daughter. In response, the State asserts that the trial court has the implicit authority to enter a no contact order for individuals who are incarcerated because the probation statute authorizes no contact orders and it is absurd to conclude that a defendant could permissibly harass a victim while incarcerated but be prevented from doing so while on probation. Further, the State claims that the Indiana Civil Protection Order Act ("CPOA"), Ind.Code 34–26–5 (Burns Code Ed. Supp.2003), authorized the trial court to enter a no contact order under the facts of this case, and as such, the trial court did not err in entering the order even though Denise and the prosecutor did not comply with the formal requirements of the statute in seeking the order.

■■■ The authority of the trial court in sentencing is confined to the statutory limits prescribed by the General Assembly. *Roach v. State*, 711 N.E.2d 1237, 1238 (Ind.1999). Furthermore, we are to strictly construe penal statutes against the State to avoid enlarging them by intendment or implication beyond the fair meaning of the language used. *State v. McGill*, 622 N.E.2d 239, 240 (Ind.Ct.App.1993). "While the rule of strict construction will not sanction the abridgment of the manifest intention of the legislature, it must be said that doctrine requires the resolution of doubts and ambiguities against the infliction of penalties." *Id.* The court will not extend the penalties provided therein to classes of persons not embraced within the penal clause of an act, even when there is a manifest omission or oversight on the part of the legislature, where the penal clause is less comprehensive than the body of the act. *Id.* "Nothing may be read into the statute which is not within the manifest intent of the legislature as gathered from the statute itself." *George P. Todd Funeral Home, Inc. v. Estate of Beckner*, 663 N.E.2d 786, 787 (Ind.Ct.App.1996).

■■■ Neither party has directed this court to a statute which directly authorizes a trial court to enter a no contact order as part of a defendant's executed sentence to the Department of Correction. Moreover,

our research has not revealed any direct statutory enactment.[5] Nonetheless, we conclude that the trial court's action in entering a no contact order was not inappropriate in this case.

■ Title 35, Article 38 (Burns Code Ed. Repl.1998 and Supp.2003) of the Indiana Code sets the perimeters for proceedings following a conviction. It establishes conditions for sentencing and commitment to the Department of Correction. I.C. 35–38–1. It further authorizes that a trial court may require that a probationer refrain from any direct or indirect contact with an individual. Ind.Code § 35–38–2–2.3(a)(17) (Burns Code Ed. Supp.2003). Consequently, Article 38 endows the trial court with the power to enter a no contact order as part of sentencing, albeit when sentencing a probationer.

As the State argues, because the trial court may order an individual convicted of a crime who is sentenced to probation to have no contact with an individual, it leads to an absurd result to say that the trial court may not order that an incarcerated criminal have no contact with an individual, especially the victim of a battery and domestic battery. It seems imperative that a trial court, for the same reasons it may restrict a convicted individual's actions while on probation, may restrict that same individual's actions while incarcerated. Nonetheless, we recognize that this is a tenuous position given the manner in which we must interpret the sentencing statutes. Be that as it may, we are not convinced that the sentencing statutes preclude a trial court from ordering that a convicted individual, while incarcerated, have no contact with the victim of his crimes. But given the lack of any directives in the sentencing statutes in this regard, we urge the General Assembly to review the sentencing statutes to determine whether it is necessary to include additional actions which trial courts may take when sentencing an individual to an executed sentence in the Department of Correction.

■ Although it requires a finespun reading of the sentencing statutes to uphold the no contact order, we are persuaded by the State's argument that the no contact order is valid, in part, because of the CPOA. Indiana Code § 34–26–5–2 authorizes a victim of domestic violence to file a petition to seek a protective order against the individual who committed the domestic violence. Although not sentenced for that offense, Jarrett was found guilty of domestic battery against Denise. As a result, Denise could seek protection from the court. Actions which may be prohibited by the CPOA include harassing, annoying, telephoning, contacting, or directly or indirectly communicating with the petitioner. I.C. § 34–26–5–9. When the testimony was introduced by Denise, Jarrett did not dispute that he had sent letters to her home. Clearly, Denise qualified as an individual who was due protection under the CPOA. That a proper petition was not filed in this case as required by the CPOA is concerning. In the future, the proper procedure should be utilized when seeking an order of protection as we do not mean for this decision to eliminate or alter the statutory requirements. How-

---

5. Indiana Code § 35–50–2–7 (Burns Code Ed. Supp.2003) sets the penalty for a Class D felony at a presumptive term of one and one-half years incarceration and a maximum ten thousand dollar fine. Additional miscellaneous sentencing provisions allow the court to declare an individual incapable of holding public office, order a fine as an alternative penalty, order restitution to the victim of the crime, the victim's family, or the victim's estate, or order a reimbursement plan. Ind. Code 35–50–5 (Burns Code Ed. Repl.1998 and Supp.2003).

ever, given the facts of this case, and the apparent necessity of the trial court to prohibit Jarrett's contact with Denise, we conclude that the trial court appropriately entered the no contact order.[6]

■ Jarrett claims that regardless of the propriety of the no contact order as to Denise, the trial court could not properly order that he have no contact with his daughter. While we understand and can sympathize with his request, the fact remains that he was found to have committed a domestic battery and battery against his ex-wife and that he was sentenced for battery as a Class D felony. Further, Jarrett is mistaken in his belief that his daughter was not a victim of this crime. Just because she was not present when the altercation occurred, there is little doubt that a child is a "victim" when her parents fight and her father is incarcerated for three years as a result of the crime. As the trial court recognized, amending the order so that Jarrett could write to his daughter at Denise's home set the stage for a violation of the no contact order, an order which he had shown that he had not been able to follow. The trial court did not err in restricting Jarrett's contact with his daughter in addition to his contact with Denise.

The judgment of the trial court is affirmed. We remand to the trial court so that the abstract of judgment and CCS may be corrected.

RATLIFF, Sr.J., concurs.

ROBB, J., dissents with opinion.

ROBB, Judge, dissents with separate opinion.

I respectfully dissent from the majority's conclusion that Jarrett and Denise's daughter was a "victim" of Jarrett's crimes and properly the subject of the no contact order. The testimony at Jarrett's trial was clear that the daughter was not present during this altercation. Moreover, there was no testimony at the trial that the daughter was even aware of the altercation, and if she was aware, it was most likely through Denise that she was made aware of the incident. Although Denise testified that she had concern for her safety because of Jarrett's behavior, when asked if she had any concerns for her daughter's safety, all she said was, "I don't want him around my child at all." Tr. at 65. None of the incidents or behaviors to which Denise testified involved the daughter at all. I recognize that the CPOA authorizes a court to issue an order of protection for the petitioner and "each designated family or household member" and also authorizes the trial court to prohibit indirect communication with the petitioner. Ind.Code § 34–26–5–9(b). However, as the majority notes, no petition pursuant to the CPOA was filed in this case and there was no testimony regarding the daughter by which she could be considered a "designated family member" requiring an order of protection. We have already stretched the limits of our statutes by allowing the no contact order in this case in the first place. I feel extending it to the daughter is stretching too far.

Moreover, I note that the CPOA further authorizes the trial court to "[s]pecify ar-

---

6. An additional argument presented by Jarrett is that no additional authority, either explicit or implied, is necessary for a trial court to enter a no contact order against an incarcerated individual because the CPOA provides such a mechanism. However, by its own limits, the CPOA only applies in situations in which domestic or family violence is involved. I.C. § 34–26–5–1. It is logical that a trial court may need to restrict an incarcerated individual's contacts in situations other than those arising out of a domestic or family setting. Consequently, we are not persuaded by this argument.

rangements for visitation of a minor child by a respondent and require supervision by a third party; or deny visitation; if necessary to protect the safety of a petitioner or child." Ind.Code § 34–26–5–9(c)(2). I acknowledge that we are not in this case dealing specifically with the restriction of visitation—Jarrett's incarceration accomplishes that as a practical matter even without an order of protection. However, the statute clearly indicates a recognition that a no contact order restricting contact between a parent and a child may be appropriate in cases where it is shown to be necessary. In this case, though, there was no evidence to show that such a severe restriction was necessary. The majority notes that the daughter was a victim of Jarrett's behavior because of his incarceration. However, I believe that she is no less a victim if we uphold the no contact order and restrict Jarrett's ability to be a parent to her in any way during his incarceration. I recognize, too, the majority's concern that allowing Jarrett to contact his daughter is "setting the stage" for a violation of the no contact order for Denise. However, Jarrett is aware of the consequences of a violation and it is not up to us to try to ensure his compliance.

I would reverse that part of the trial court's order which extends the no contact order to the daughter. In all other respects, I concur in the majority opinion.