Shean WEST, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0812–CR–1084.

Court of Appeals of Indiana.

June 4, 2009.

William F. Thoms, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Senior Judge.

Following a bench trial, Shean West (West) was convicted of Domestic Battery, as a Class A Misdemeanor.[1]  He was sentenced to a term of 365 days.  The offense

---

1.  It is unclear from the record whether the defendant was also found guilty of a second count alleging Battery as a Class A Misdemeanor.  However, the trial court stated prior to sentencing that "count two [the Battery count] merges" (Tr. 56) and no sentence was imposed upon that count.  Nevertheless, the Abstract of Judgment reflects that West was convicted of the Battery charge as well as the Domestic Battery charge.  Accordingly, we direct the trial court to modify the Abstract of Judgment to delete the Battery conviction.

resulted from an altercation between West and Peggy West, his wife.

The sole assertion presented upon appeal is that there is insufficient evidence to support the conviction because Mrs. West's testimony was inherently contradictory and therefore subject to the rule of incredible dubiosity.

■ It is well settled that this appellate tribunal will not weigh conflicting evidence and therefore will not reweigh the evidence nor judge witness credibility. *Gleaves v. State,* 859 N.E.2d 766 (Ind.Ct. App.2007). However, the rule of incredible dubiosity was recently restated by our Supreme Court in *Fajardo v. State,* 859 N.E.2d 1201 (Ind.2007) as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

859 N.E.2d at 1208 (quoting *Love v. State,* 761 N.E.2d 806, 810 (Ind.2002)).

■ West contends that there was a "conflict in the testimony about whether he struck or strangled her." (Appellant's Brief at 6). This contention misses the point of the rule of incredible dubiosity and of our standard of review in such cases. We first note that whether West strangled his wife is not within the issues. Although he was charged with Strangulation as a Class D felony in an additional count, the court acquitted him of that crime.

More importantly, however, Peggy West testified that the altercation escalated from inside their apartment to outside near West's truck. She testified that "when he pushed me with such a force and I landed back up into the truck the back of my head hit the top of the truck...." (Tr. at 12). She added that she "felt it" and that her head felt "bad ... it was hurting, but I knew I had to get away." *Id.*

Officer Gates, who had responded to a run at the apartment building, testified that Peggy West knocked on the window of his car, that she "seemed frightened, she was crying, hair was disheveled." (Tr. at 34). She told him that West had "pushed her." (Tr. at 35). On cross-examination, Officer Gates testified that Peggy West had told him that there was an argument and that "she goes down to the truck, he follows her pushes her, she hits her head." (Tr. at 38). The Officer stated that she had "no visible injuries, [that] she stated that she did not need any medical attention and that he 'did not observe any redness, swelling or any bump or bruise.'" (Tr. at 40).

West relies upon Officer Gates' testimony attempting to cast doubt upon Peggy West's testimony as to its completeness and as to the full account of the events at the apartment and outside the building.

We would first observe that Peggy West was not the sole witness. As noted, Officer Gates also testified. A question therefore arises as to whether the rule of incredible dubiosity is applicable under such circumstances.

■ Our review of the case law leads us to conclude that the rule of incredible dubiosity is not necessarily rendered inapplicable merely because more than one wit-

ness testifies for the State.[2] For example, in *Fajardo,* in addition to the child molest victim there were several other witnesses including the child's mother, a caseworker and a forensic pediatrician. Our Supreme Court nevertheless reviewed the testimony of the eleven-year-old victim and found the defendant's argument that the other witnesses merely "parroted the complainant's allegations" unavailing. The court held that the child's testimony was "not so incredibly dubious or inherently improbable that no reasonable person could believe it." 859 N.E.2d at 1209.

In *Holden v. State,* 815 N.E.2d 1049 (Ind.Ct.App.2004), *trans. denied.* Holden's co-defendants testified against him. He acknowledged that the rule refers to the testimony of a sole witness to a fact but argued that the rule should be expanded to those cases in which "several witnesses give testimony rendered suspect." *Id.* at 1053. The court stated that it was not persuaded "that such an expansion of the rule is needed." *Id.* Nevertheless, the court considered all of the relevant testimony and held, with respect to the testimony of the accomplices, that there was "nothing inherently improbable in their testimony." *Id.*

■ Accordingly, we turn to a consideration of the testimony of Peggy West as to whether it was so incredibly dubious or inherently improbable that no reasonable trier of fact could believe it. In this regard, her testimony is not to be discounted merely because it does not square precisely with other evidence or that it may contain some discrepancies. The standard for the rule is "inherent contradiction" in the testimony of the witness under consideration, not whether that testimony may be in contradiction to the testimony of other witnesses. *Altes v. State,* 822 N.E.2d 1116 (Ind.Ct.App.2005), *trans. denied.*

In *White v. State,* 846 N.E.2d 1026, 1032 (Ind.Ct.App.2006), *trans. denied,* the court stated that by "claiming contradictory testimony, instead of inherent contradictions within one witness' own testimony, White is actually asking us to reweigh the evidence and assess the witnesses' credibility." As in *White,* to the extent that West requests us to view Peggy's testimony in the light of Officer Gates' testimony, we decline. Even were we to do so and note that Peggy West's trial testimony was more extensive as to the events which transpired than what she specifically told Officer Gates, such difference or differences do not indicate that her testimony is in contradiction to the testimony of the Officer.

The only remaining question, then, is whether the testimony of Peggy West is so internally and inherently contradictory as to preclude any reasonable trier of fact from believing it.

Any perceived inconsistencies in her testimony do not rise to the level of incredible dubiosity. See *Gregory v. State,* 885 N.E.2d 697 (Ind.Ct.App.2008), *trans. denied; Gleaves v. State,* 859 N.E.2d 766 (Ind.Ct.App.2007). In this respect, the fact that Officer Gates did not notice any visible injuries or bruises does not detract from her testimony concerning hitting her head on the truck when West pushed her. See *Jarrett v. State,* 804 N.E.2d 807 (Ind. Ct.App.2004), *summarily affirmed upon transfer,* 829 N.E.2d 930 (Ind.2005). Officer West did in fact verify that Peggy told him that such event occurred and that she "hurt."

---

**2.** But *see Baltimore v. State,* 878 N.E.2d 253 (Ind.Ct.App.2007), *trans. denied; Cox v. State,* 780 N.E.2d 1150 (Ind. Ct.App.2002); *Hollo-* *way v. State,* 773 N.E.2d 315 (Ind.Ct.App. 2002). *trans. denied.*

The judgment and sentence upon the conviction for Domestic Battery are affirmed.

RILEY, J., and BROWN, J., concur.