**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 12 2013, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS MARGOLIS**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHAUN WILKINSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 33A04-1209-CR-478 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Mary G. Willis, Judge
Cause No. 33C01-1111-FA-25

**June 12, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Shaun Wilkinson (Wilkinson), appeals his convictions for Counts I and II, dealing in a schedule III controlled substance within 1000 feet of a family housing unit, Class A felonies, Ind. Code § 35-48-4-2(b)(2)(b)(iii).

We affirm.

## ISSUE

Wilkinson raises two issues on appeal, which we consolidate and restate as the following issue: Whether the testimony of the informant, Tiffany Flynn, was inherently contradictory as to render her testimony incredibly dubious.

## FACTS AND PROCEDURAL HISTORY

On July 22, 2011, Tiffany Flynn (Flynn) saw Wilkinson at the Village Pantry located on Broad and 6th Street, in New Castle, Indiana. Wilkinson told her that "he had Hydrocodone available for sale if she knew anyone that wanted any." (Transcript p.74). The two had known each other for about 15 years but only as acquaintances. At the time, Flynn was working as a paid confidential informant for the Henry Area Drug Task Force (DTF). After the conversation, Flynn notified DTF and told them that Wilkinson had approached her to buy Hydrocodone pills from him.

2

On July 26, 2011, Flynn made contact with Wilkinson, this time to make a controlled buy. They agreed to meet at Sky Mart in New Castle, Indiana. Before the buy, Detective Aaron Strong of the DTF (Detective Strong), conducted a pre-buy search, gave her a hidden camera and money to use, and drove her to a location near the buy site. Detective Strong and two other officers parked half a block away in an unmarked car and filmed the transaction.

When Flynn got to Sky Mart, Wilkinson had not yet arrived. He eventually pulled up on his motorcycle. Flynn then gave Wilkinson money and Wilkinson gave her ten Hydrocodone pills in a bottle. Wilkinson also told Flynn that if she wanted to buy more pills, he could get her more. Flynn agreed and asked Wilkinson to get hold of her if he could get more. After the buy, Flynn walked back to where the DTF had dropped her off. Detective Strong then conducted a post-buy search and retrieved a bottle of pills containing ten Hydrocodone pills from Flynn.

On July 27, 2011, Wilkinson contacted Flynn to sell her more Hydrocodone. Once more, Flynn called DTF and informed them of the buy. The controlled buy was to take place at Sky Mart again. Just as before, DTF arranged to pick Flynn up, conducted the pre-buy search, gave her money and a hidden camera, and dropped her off a block away from Sky Mart. Detective Strong parked across the parking lot and videotaped the transaction. When Flynn returned to the car, Detective Strong conducted a post-buy search, and again, he found that she had a bottle containing ten Hydrocodone pills.

3

On November 30, 2011, the State filed an Information, charging Wilkinson with two Counts of class A felonies, dealing in a schedule II controlled substance within 1000 feet of a family housing unit. However, at the close of the evidence, the State amended both Counts in its charging Information to allege that Wilkinson was dealing in a schedule III controlled substance within 1000 feet of a family housing unit. On August 7, 2012, the jury found Wilkinson guilty of both Counts. On September 4, 2012, the trial court sentenced Wilkinson to concurrent sentences of twenty-two years with eight years suspended and four years on probation.

Wilkinson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Wilkinson contends that the state failed to present sufficient evidence beyond a reasonable doubt to sustain his convictions. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v State*, 872 NE.2d 208, 212-13 (Ind. Ct. App. 2000), *trans denied.* We will consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *See id.* at 213. Reversal is appropriate only when a person would not be able to form inferences as to each material element of the offense. *Id*.

Wilkinson asserts that Flynn's testimony was inherently contradictory so as to render her testimony incredibly dubious. Within the narrow limits of the "incredible dubiosity" rule, a court may impinge upon a jury's function to judge the credibility of a witness. *Love v State,* 761 N.E.2d 806, 810 (Ind. 2002). If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id.* This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Id.* Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id.*

In support of his argument, Wilkinson alleges several inconsistencies with respect to Flynn's testimony. He states that it was not clear where Flynn lived. He argues it was highly incredible that after 15 years of not talking to Wilkinson, he offered to sell Hydrocodone to her. He argues that Flynn was not sure which phone she used to call Detective Strong to arrange the controlled buys. He maintains that it was highly unbelievable that it was her calling to be an informant because, "her motivation included the statement that she was a 'good citizen'," but then "begs the question: where did this 'good citizen' go and how did she behave to prompt the offers to her to buy any *controlled substance*?" (Appellant's br. p 16). Also, he claims that Flynn was not sure of the date they first met to talk about how she could purchase Hydrocodone from him.

5

Mindful of the foregoing arguments, he maintains that her testimony overall, casts doubt on her credibility as a witness, thus making her testimony unbelievable.

As this court has explained, such arguments "miss [] the point of the rule of incredible dubiosity." *West v State*, 907 N.E.2d 176, 177 (Ind. Ct. App. 2009). Even though discrepancies arise, a witness's testimony is not to be discounted merely because it does not square precisely with other evidence or that it may contain some discrepancies. *Id.* The standard for the rule is "inherent contradiction" in the testimony of the witness under consideration. *Id.*

Our review of the record establishes that Flynn's testimony was consistent throughout trial. She was clear that she had known Wilkinson for a period of 15 years but only as an acquaintance. She testified she saw Wilkinson at the Village Pantry on July 22, 2011. She testified that it was on that day that Wilkinson mentioned to her that he had some Hydrocodone pills and asked her if she knew anyone who was interested in buying them. She then saw Wilkinson on July 26, 2011, at Sky Mart, where she bought ten Hydrocodone pills from him. She explained how the controlled buy was conducted and DTF's role in it. She also described Wilkinson offering to sell her more of the Hydrocodone pills the next day and the subsequent controlled buy. Based on the foregoing we do not find her testimony inherently contradictory, and thus, the incredible dubiosity rule is inapplicable.

Moreover, there is evidence from the video recordings depicting Wilkinson selling Hydrocodone to Flynn. In addition, Flynn's testimony was also corroborated by Detective Strong who facilitated the controlled buys on both July 26 and July 27, 2011. Therefore, we conclude that Flynn's statement was not incredibly dubious such that no reasonable person could believe it. As a result, we find that there is sufficient evidence to support the conviction beyond a reasonable doubt.

## CONCLUSION

Based on the foregoing, we conclude that Flynn's testimony was not inherently contradictory so as to render her testimony incredibly dubious.

Affirmed.

BRADFORD, J. and BROWN, J. concur