**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY E. PEARSALL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1301-CR-45 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Helen Marchal, Judge
The Honorable Shannon Logsdon, Commissioner
Cause No. 49G16-1209-CM-61142

**August 28, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant–Defendant, Terry E. Pearsall (Pearsall), appeals his conviction for battery, a Class A misdemeanor, Ind. Code § 35-42-2-1(a)1(A).

We affirm.

## ISSUE

Pearsall raises one issue on appeal, which we restate as follows: Whether the testimony of Melody Goodwin (Goodwin) was inherently contradictory so as to render her testimony incredibly dubious.

## FACTS AND PROCEDURAL HISTORY

Pearsall and Goodwin met in 2005 and they started dating. On September 2, 2012, Pearsall visited Goodwin at her apartment. They were both drinking. At some point, Goodwin asked Pearsall how much money he made but that question made Pearsall mad. Pearsall walked across living room lunged at Goodwin, pushed her left shoulder, and threw her on the ground. Goodwin went down on her right side and she hurt her right elbow and bruised her right knee. Goodwin thereafter went outside and she called the police.

Indianapolis Metropolitan Police Officer Jovan Lopez (Officer Lopez) responded to the call. When he arrived, he found Goodwin standing in the pouring rain. He questioned Goodwin as to what had happened and even though she was visibly shaken, she calmly narrated her story. Officer Lopez thereafter proceeded to Goodwin's apartment where he found Pearsall inside. During questioning, Officer Lopez asked

2

Pearsall at what point he had pushed Goodwin and Pearsall response was, "when she got up in my face." (Transcript p. 35).

On September 2, 2012, the State filed an Information charging Pearsall with Count I, domestic battery, class A misdemeanor, Ind. Code Section 35-42-2-1.3(a); Count II, battery, class A misdemeanor, I. C. § 35-42-2-1(a)(1)(A); and Count II, trespass, Class A misdemeanor I. C. § 35-43-2-2(a). On January 3, 2012, before Pearsall's bench trial commenced, the State moved to dismiss Count I and Count III. At the close of the hearing, the trial court found Pearsall guilty of battery. The trial court sentenced Pearsall to 365 days, with 106 days executed and the remaining 259 days suspended to probation.

Pearsall now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Pearsall now contends that Goodwin's testimony was inherently contradictory so as to render her testimony incredibly dubious.

In addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Whedon v. State,* 765 N.E.2d 1276, 1277 (Ind. 2002). Appellate courts may, however, apply the "incredible dubiosity" rule to impinge upon a jury's function to judge the credibility of a witness. *Love v. State,* 761 N.E.2d 806, 810 (Ind. 2002). This rule is expressed as follows:

If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

In support of his argument, Pearsall argues that there were inconsistencies with respect to Goodwin's testimony. Pointing to specific examples, he asserts in his brief that:

Human experience teaches that if one had been drinking heavily and arguing throughout the night as admitted by both Ms. Goodwin and Mr. Pearsall, the recollection of events may not be accurate. Ms. Goodwin claimed she knew that Mr. Pearsall was having sexual relations with another woman. She testified that Mr. Pearsall came at her and pushed her down because they were probably arguing about money. Her version of the events is highly questionable. []

This is classic example of a vindictive ex-girlfriend making false accusation. Ms. Goodwin was motivated to say Mr. Pearsall pushed her because she was angry at him about having sexual relations with another woman and also she was intoxicated. She wanted to seek revenge against Mr. Pearsall infidelity. []

Finally, Ms. Goodwin's version was not corroborated by the State's other witness, Officer Lopez.

(Appellant's Br. p 9).

Our review of the record establishes that Goodwin's testimony was not so incredible dubious or inherently improbable that no reasonable person could believe it. We find that Officer Lopez's testimony at trial corroborated Goodwin's testimony. Specifically, Officer Lopez testified that when he arrived at Goodwin's apartment, he observed that Goodwin was visibly shaken but calm enough to narrate to her what had

4

happened. Officer Lopez also stated that when he questioned Pearsall that night, Pearsall admitted that he had pushed Goodwin when she got up in his face. Further, Officer Lopez testified that although he observed open containers of alcohol at Goodwin's apartment, he did not observe any signs that Goodwin was intoxicated.

In this regard, we find that Pearsall has not shown that Goodwin's testimony was incredibly dubious. Pearsall's theory that Goodwin was drunk that night and she was a jilted ex-girlfriend does not establish that Goodwin's testimony was not credible. Goodwin's testimony was consistent throughout trial and her testimony of the ordeal was corroborated by Officer Lopez. We find that Pearsall's argument misses "the point of the rule of incredible dubiosity." *West v. State*, 907 N.E.2d 176, 177 (Ind. Ct. App. 2009. Accordingly, we find that the record is void of any evidence that Goodwin's testimony was so unbelievable that no reasonable person could believe it under the circumstances.

### CONCLUSION

Based on the foregoing, we conclude that Goodwin's testimony was not inherently contradictory so as to render her testimony incredibly dubious.

Affirmed.

KIRSCH, J. and C. J. ROBB concur