**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 30 2014, 8:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK A. THOMA**
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM E. BOWEN,                          )
                                           )
    Appellant-Defendant,              )
                                           )
        vs.                  )    No. 02A05-1405-CR-246
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.               )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1306-FB-117

**December 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

William E. Bowen appeals his convictions for sexual misconduct with a minor as a class B felony and sexual misconduct with a minor as a class C felony. Bowen raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm.

FACTS AND PROCEDURAL HISTORY

In July 2011, a national speed skating competition was held in Fort Wayne, Indiana. T.G., who was fourteen years old at the time, was a competitive speed skater and traveled from the State of Washington to Fort Wayne for the competition with her father and her skating team, including her friend D.D. Bowen, who was over twenty-one years old, was a professional skater and also attended the skating competition.[1] Bowen stayed at a hotel across the street from the location of the competition. T.G. did not stay at the hotel, but some of her teammates including D.D. stayed there. Between her races, T.G. watched her friends' races, took a nap, and visited with her friends and D.D. at the hotel across the street. The races at the competition were scheduled throughout the day, and competitors including Bowen went back and forth between the location of the races and the hotel because "it was convenient since it was right across the street, and there was a running shuttle to take you back and forth." Transcript at 146.

During one of the days of the competition, T.G. walked through one of the hallways of the hotel across the street from the competition. The door to Bowen's hotel room was open, and Bowen and T.G. "said hello to each other." Id. at 122. Bowen

_____

[1] The presentence investigation report in the record indicates Bowen's date of birth is April 4, 1986.

2

invited T.G. into his room, she went inside, and Bowen had T.G. sit down on the bed. T.G. knew that Bowen had a roommate but there was no one there at the time. The two talked, and Bowen locked the door. Bowen told T.G. "everything would be okay, not to worry." Id. at 123. He took off T.G.'s clothes and took off his own clothes, placed a condom on his penis, and moved on top of T.G., who was on her back. Bowen told T.G. that "nobody can ever find out what is happening" and that she would "need to just stay quiet." Id. at 124. Bowen placed his penis in T.G.'s vagina, held his hands against her wrists, "had [her] hands pushed back," and kissed her on her cheek, lips, and neck. Id. at 125. Bowen took off the condom and threw it away, placed a towel around himself, handed T.G. her clothes, and told her that she could leave.

T.G. walked back to the competition but did not tell anyone what had happened "because [of] how much [she] looked up to him, [she] felt people would think [she] wanted it." Id. at 127. At the competition, D.D. noticed that T.G. had "an attitude and [was] standoffish." Id. at 147. D.D.'s mother noticed that T.G. "all of a sudden [] became real irritable and edgy" and "kind of didn't want to be with pretty much anyone." Id. at 160. Bowen's former spouse, who was at the competition as she was also a speed skater, walked past T.G. and noticed that she "looked very distraught and scared" and that she "could just see in her eyes that there's this fear there." Id. at 173. T.G.'s father also noticed during the week of the competition and then afterwards that T.G. became withdrawn and moody. A short time after the competition, T.G. stopped skating. In approximately October of 2012, T.G. told D.D. what had occurred with Bowen, and then,

3

with D.D.'s encouragement, T.G. told her mother what had occurred. T.G.'s mother informed T.G.'s father, and T.G.'s father contacted the police.

On June 24, 2013, the State charged Bowen with Count I, sexual misconduct with a minor as a class B felony alleging Bowen had sexual intercourse with T.G.; and Count II, sexual misconduct with a minor as a class C felony alleging Bowen performed or submitted to fondling or touching T.G. with the intent to arouse T.G. or himself. A trial was held at which the jury heard the testimony of T.G., T.G.'s father and mother, D.D., D.D.'s mother, Bowen's former spouse, Bowen, and Frank Holland, who owned a small import business and sold inline skating products at the competition. T.G. testified that, between races, she would watch the races of her friends, take a nap, or "would go across the street to the hotel and hang out with the people that weren't racing as well." Id. at 120. D.D. testified that she saw Bowen at the hotel "a lot," and when asked what times she saw Bowen at the hotel, D.D. testified "[i]t was more during down time when it wasn't as busy at the [competition], a lot of people would go over there." Id. at 146-147. D.D.'s mother testified that she saw Bowen both at the competition and at the hotel, that she observed Bowen in the lobby of the hotel where skaters would mingle, and that the racing schedule permitted competitors to leave the competition. Bowen's former spouse testified that she observed Bowen at the hotel "throughout the day" and at night and that "[w]e were free to kind of come and go." Id. at 167. When asked whether Bowen was at the competition the whole time he was not skating, Bowen's former spouse answered "[n]o" and indicated that sometimes she saw Bowen at the hotel during the day. Id. at

4

171. Holland testified that he was a vendor at the competition, that he sponsored skaters, that he spoke with Bowen daily, and that he spoke with Bowen about the possibility of his becoming a sponsored skater for Holland. Holland testified that he stayed at the competition all day. When asked if he spent the majority of his breaks with Bowen, Holland answered affirmatively. Holland testified that it was hard to leave the competition because it was possible to miss a race if the race schedule was early or late. Bowen testified that he always tries to be at the location of his races two hours ahead of time to give himself an hour to warm up, that he would probably lose his contract as a professionally-sponsored racer if he missed a race, and that he raced approximately four or five times a day. He testified that his schedule was "scattered just long enough where [he] might as well just stay in the building." Id. at 245. Bowen testified that he recalled T.G. asking him for advice and that T.G. "was real upset over this one race, she had almost won or something or qualify and it destroyed her." Id. at 246. He also testified that he did not spend time alone with T.G. at the hotel and did not have sex with her.

The jury found Bowen guilty on both counts as charged. The court sentenced him to ten years for his conviction under Count I and four years for his conviction under Count II and ordered the sentences to be served concurrently with each other.

DISCUSSION

The issue is whether the evidence was sufficient to sustain Bowen's convictions for sexual misconduct with a minor. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v.

5

State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

Bowen does not dispute his age or the age of T.G. at the time of the offenses. He asserts that T.G.'s testimony is incredibly dubious, and specifically argues that T.G. alleged that he had sex with her in his hotel room, which he shared with roommates, during the day while the skating competitions occurred, that he raced approximately four or five times a day, and that he would always try to arrive at the arena two hours before a race to warm up. He argues that, other than T.G.'s testimony, the only other evidence was testimony that others observed a fourteen-year-old girl who appeared to be irritable, on edge, withdrawn, and moody. Bowen contends that T.G.'s testimony was completely inconsistent with his testimony and that of Holland, who indicated Bowen was a top athlete, raced four or five times a day, and conversed with fans. He also argues there was no DNA evidence or medical testimony as to physical injuries or sexual contact, that no one observed T.G. leaving the hotel in the middle of the day, and that T.G. did not tell anyone that he did anything inappropriate to her from June of 2011 until October of 2012.

The State maintains that the evidence was sufficient to support Bowen's convictions and that T.G.'s testimony was not incredibly dubious. The State notes that T.G. testified that Bowen invited her into his room, locked the door, removed her clothes, kissed her face and neck, and had sexual intercourse with her. The State further argues

6

that Bowen's former spouse noticed T.G. looked disheveled and scared and that T.G.'s mother and father, Bowen's former spouse, D.D., and D.D.'s mother testified that T.G. changed during the competition. The State argues T.G. eventually confided in D.D., that she wanted D.D. to keep what happened a secret because she was ashamed and feared people would think she had wanted to have sex with Bowen, and that it was reasonable for the jury to believe T.G.'s testimony that she did not disclose what happened because she was afraid. The State also notes that T.G., D.D., and Bowen's former spouse each testified to seeing Bowen at the hotel between races. The State maintains that the jury was in the best position to assess the credibility of the witnesses and that Bowen's arguments are simply a request for this court to reassess credibility and reweigh the evidence.

Ind. Code 35-42-4-9 governs the crime of sexual misconduct with a minor and provided in part at the time of the offenses that "[a] person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse . . . commits sexual misconduct with a minor" and that "the offense is . . . a Class B felony if it is committed by a person at least twenty-one (21) years of age. . . ." The statute also provided that "[a] person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits sexual misconduct with a minor" and that "the

7

offense is . . . a Class C felony if it is committed by a person at least twenty-one (21) years of age. . . ." The State alleged, under Count I, that between July 16 and 22, 2011, "Bowen, being at least twenty-one (21) years of age, did perform or submit to sexual intercourse with T.G., a child who was then at least fourteen (14) years of age but under the age of sixteen (16) to wit: 14 years of age . . . ." Appellant's Appendix at 13. The State alleged, under Count II, that between July 16 and 22, 2011, "Bowen, being at least twenty-one (21) years of age, did perform or submit to fondling or touching with T.G., a child who was then at least fourteen (14) years of age, but under sixteen (16) years of age, to wit: 14 years of age, with the intent to arouse or satisfy the sexual desires of T.G. and/or [] Bowen . . . ." Id. at 14.

To the extent Bowen asserts that the substantive evidence against him came only from the uncorroborated testimony of T.G., we observe that the uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991). To the extent Bowen asserts that the incredible dubiosity rule requires reversal of his convictions, we note that the rule applies only in very narrow circumstances. See Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

8

Id.

Bowen fails to show that the testimony of T.G. was inherently contradictory. To the extent T.G.'s testimony conflicted with the testimony of Bowen or Holland, or Bowen argues that T.G.'s testimony was not believable or less believable than his testimony or the testimony of other witnesses, we note that these are issues of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. Whited v. State, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence or judge the credibility of the witnesses. See Jordan, 656 N.E.2d at 817. Further, we cannot say that T.G.'s testimony that Bowen went across the street to the hotel during the skating competition, locked the door of his hotel room, and kissed and had sexual intercourse with T.G. was so inherently improbable that no reasonable person could believe it. Bowen does not show how the testimony against him was somehow internally inconsistent and has not shown T.G.'s testimony to be incredibly dubious.

Based upon our review of the evidence and testimony most favorable to the convictions as set forth in the record and above, we conclude that sufficient evidence exists from which the trier of fact could find Bowen guilty beyond a reasonable doubt of sexual misconduct with a minor as a class B felony and sexual misconduct with a minor as a class C felony. See Brakie v. State, 999 N.E.2d 989, 998-999 (Ind. Ct. App. 2013) (finding that child victim's testimony was not inherently contradictory and that the incredible dubiosity rule did not apply), trans. denied.

9

CONCLUSION

For the foregoing reasons, we affirm Bowen's convictions for sexual misconduct with a minor as a class B felony and sexual misconduct with a minor as a class C felony.

Affirmed.

BAILEY, J., and ROBB, J., concur.