**Raymond LOVE, Appellant
(Defendant below),**

v.

**STATE of Indiana, Appellee
(Plaintiff below).**

No. 49S00–0008–CR–491.

Supreme Court of Indiana.

Jan. 23, 2002.

Kurt A. Young, Nashville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Raymond Love was convicted of child molestation for having sex with his daughter. We affirm, finding the evidence sufficient and the information not at variance with the evidence presented. We also find testimony that the county jail does not monitor medication use by inmates (such that Love could have obtained medicine from another and cured himself of a venereal disease) relevant to his having tested negative for the disease.

### Background

The facts most favorable to the trial court's judgment indicate that Defendant repeatedly molested the victim, his daughter, from 1997 through 1999. When the victim was nine years old, she began having contact with her father. The victim had previously been molested by her stepfather and told her father about it. She testified that soon after she confided in Defendant, he began having sex with her. Defendant told his daughter he was molesting her to "put it back in order from what [her] step-dad did." The victim experienced recurring urinary tract infections and her doctor informed the victim's mother that she was suffering from trichomonas, a sexually transmitted disease. The victim eventually told her mother that Defendant had been having sex with her.

Defendant was convicted of three counts of Child Molestation, a Class A felony.[1] He then pled guilty to being a habitual offender.[2]

### I

Defendant seeks to have his convictions set aside on grounds that the charging information filed by the State alleged facts that were different from the evidence actually presented to the jury as to Defendant's guilt. Appellant's Br. at 13.

The charging information alleged three time periods during which the molestations occurred. The first count alleged that Defendant molested the victim on or between January 12 and February 14, 1998. Count two alleged that molestation occurred on or between August 1 and November 30, 1998. Count three alleged that molestation occurred on or between March 1 and 31, 1998.

The State presented evidence at trial that the molestation began sometime "close to winter" while the victim lived at 33rd and Meridian. The victim had lived

---

1. Indiana Code § 35-42-4-3 (1998).

2. *Id.* § 35-50-2-8 (1998).

at 33rd and Meridian Street from April, 1997, to August, 1998. She stated that the acts continued when she moved to New York Street in August, 1998. At that time, she would see Defendant almost every day. In December, 1998, the victim moved in with Defendant and his wife. The victim testified that Defendant continued the pattern of having sex with her when his wife was not home. This continued until April, 1999. (*Id.*)

■ Indiana Code § 35–34–1–2(a)(5) requires that an information "[state] the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense." The State must also "[state] the time of the offense as definitely as can be done if time is of the essence of the offense." *Id.* § 35–34–1–2(a)(6) Where time is not of the essence of the offense, however, it is well established that "the State is not confined to proving the commission on the date alleged in the affidavit or indictment, but may prove the commission at any time within the statutory period of limitations." *See Herman v. State*, 247 Ind. 7, 17, 210 N.E.2d 249, 255 (1965) ("[W]here time is not of the essence of the offense, under an allegation of a specific date, the offense may ordinarily be proved as having occurred at any date preceding the filing of the affidavit or indictment which is within the statute of limitations."); *Quillen v. State*, 271 Ind. 251, 252, 391 N.E.2d 817, 818 (1979) (citing *Stallings v. State*, 232 Ind. 646, 114 N.E.2d 771 (1953)).

■ Time is not of the essence in this case. *See Barger v. State*, 587 N.E.2d 1304, 1307 (Ind.1992) (holding that in most circumstances, time is not of the essence in the crime of child molesting) (citing *Hodges v. State*, 524 N.E.2d 774 (Ind.1988)). In child molestation cases, the exact date is only important in limited circumstances, such as where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies. *Id.*

It appears from the information that the State made a typographical error. The information indicates three separate acts and lists the time period it alleges that each act occurred. The information alleges that Count I occurred between January 12, 1998, and February 14, 1998. Count II is alleged to have occurred between August 1, 1998, and November 30, 1998. Count III indicates a time period between March 1, 1998, and March 31, 1998. The State suggests, and it appears from the sequence of the dates for each count, that the State intended to allege that Count III occurred between March 1, 1999, and March 31, 1999.

Because time was not of the essence in the crimes alleged, the State's typographical error did not prejudice Defendant. As Defendant states in his brief, the evidence showed, "(1) there were a series of [molestations] that began during time [the victim and her mother] lived at 33rd and Meridian; (2) they began living there in April, 1997; and (3) the incidents ended in 1999." *See* Appellant's Br. at 14. It is clear from the information that Defendant was being charged with three acts of molestation. Furthermore, the information would be sufficient even if it were restricted to the time periods it listed; the State presented evidence of multiple acts of molestation that occurred between August, 1998, and April, 1999. Therefore, there was evidence of molestation during each time period indicated in the charging information.

## II

■ Defendant contends that there was insufficient evidence to convict Defendant of child molestation because his conviction was based on the inherently incredible and dubious testimony of the victim. Appel-

lant's Br. at 16. Defendant argues that the rule of "incredible dubiosity" applies because the victim's testimony was coerced and was inherently improbable.

During the trial, the victim testified that her father began molesting her soon after she told him that she had been molested by her step-father. She testified that Defendant had sex with her many times during 1997 and 1998. After she had been diagnosed with trichomonas, a sexually transmitted disease, the victim's mother asked her with whom she had been having sex. The victim's mother testified that her daughter initially denied that Defendant had had sex with her but eventually told her that he had. The victim testified that it was hard to tell her mother that Defendant was having sex with her, but that she told her because she wanted it to stop.

■■■ In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. *See Brasher v. State*, 746 N.E.2d 71, 72 (Ind.2001); *Chambliss v. State*, 746 N.E.2d 73, 77 (Ind.2001). We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. *See Brasher*, 746 N.E.2d at 72; *Chambliss*, 746 N.E.2d at 77. We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *See Brasher*, 746 N.E.2d at 72; *Chambliss*, 746 N.E.2d at 77.

■■■ Within the narrow limits of the "incredible dubiosity" rule, a court may

impinge upon a jury's function to judge the credibility of a witness. *White v. State*, 706 N.E.2d 1078, 1079 (Ind.1999). If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id.* This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Id.* Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Stephenson v. State*, 742 N.E.2d 463, 498 (Ind.2001) (quoting *Bradford v. State*, 675 N.E.2d 296, 300 (Ind. 1996)).

We find that the evidence was sufficient for a jury to convict Defendant and that the "incredible dubiosity" rule does not apply. Defendant has not shown the victim's testimony to be coerced, and there was nothing inherently improbable or contradictory about her testimony.[3] Defendant suggests that the victim's mother coerced her into testifying,[4] but Defendant cross-examined the victim, questioning her credibility and whether her testimony had been coerced. It was within the jury's province to evaluate the witness's credibility, and the jury chose to believe the victim.

### III

■■ Defendant contends that his convictions should be set aside because the trial court allowed testimony that Defendant argues was impermissibly prejudicial.

---

**3.** Defendant cites *Penn v. State*, 237 Ind. 374, 146 N.E.2d 240 (1957), where this Court found the testimony of a witness to be inherently contradictory. In *Penn*, a sixteen-year-old girl testified that she became pregnant by the defendant in that case. The court found the circumstances described in her testimony to be so bizarre as to make her testimony inherently improbable. In this case, there was nothing in the victim's testimony that seems impossible.

**4.** Defendant argues that "[the victim's mother] wished to cause Defendant to divorce his current wife." (Appellant's Br. at 18)

The victim had suffered from trichomonas, a sexually transmitted disease. On June 11, 1999, the trial court ordered jail personnel to test Defendant for trichomonas, but Defendant was not tested until July 29, 1999. When he was finally tested, Defendant tested negative for trichomonas.

Defendant pointed to his trichomonas test results as evidence that he did not have sex with the victim. The State countered with testimony that Defendant could have been treated for and cured of trichomonas while he was in jail. Sergeant Neilander, the supervisor of the county jail medical department, testified that the jail administers a drug, Flagel, to inmates to treat trichomonas. He further testified that there was no record that Defendant had requested or had taken any medication for trichomonas. However, Neilander only testified that inmates can receive Flagel and are responsible for taking it themselves. The State's argument, therefore, was that because inmates were responsible for administering their own medication, another inmate could have given Flagel to Defendant. This would have made it possible that the victim had contracted trichomonas from Defendant even though he later tested negative for it.

In a pretrial motion in limine and again at trial, Defendant moved to exclude Sergeant Neilander's testimony regarding Defendant's ability to get medication for trichomonas from other inmates while he was in jail. Defendant argued that it was "pure speculation" that Defendant had cured himself of trichomonas and improper to allow the jury to speculate that he had.

■ Indiana Evidence Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." If a witness is not testifying as an expert, "the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . rationally based on the perception of the witness. . . ." Evid. R. 701. "An inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility." See Vasquez v. State, 741 N.E.2d 1214, 1216 (Ind.2001) (citing Shutt v. State, 233 Ind. 169, 174, 117 N.E.2d 892, 894 (1954)).

Sergeant Neilander testified that inmates in the Marion County jail are given a two-week supply of medicine at a time and allowed to take it without any monitoring. While he did testify that inmates without medicine have access to other inmates' medicine if the other inmates allow it, he did not speculate as to whether Defendant obtained medication in jail.

Defendant argues that the jury was permitted to speculate improperly that Defendant received medication from another inmate while in jail. Under the circumstances, however, Sergeant Neilander's testimony was proper. Defendant contended that the victim had been molested by her step-father in the past and could have gotten trichomonas from him. Defendant further claimed that because he did not have trichomonas, he could not have given it to his victim.

Evidence that Defendant tested negative for trichomonas would create an inference that Defendant had not had sex with the victim. It was therefore permissible for the trial court to allow the State to introduce evidence that it was possible that Defendant could have avoided having been diagnosed with trichomonas by getting medication from another inmate.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and BOEHM, J., concur.

RUCKER, J., concurs in parts I and II and dissents to part III with a separate opinion in which DICKSON, J., concurs.

RUCKER, Justice, concurring in part and dissenting in part.

I concur in parts I and II and dissent to part III. Evidence that it was possible Love could have obtained medication from another inmate raises an inference based on pure speculation and conjecture. The inference of course is that Love indeed obtained such medication thereby accounting for his negative test result for a sexually transmitted disease. In my view the trial court erred by allowing this testimony into evidence. "An inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility." Op. at 811 (quoting *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind.2001)). However, because there was substantial evidence of Love's guilt, the error was harmless. Therefore, I agree with the majority's conclusion that the judgment of the trial court should be affirmed.

DICKSON, J., concurs.