**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jul 08 2013, 10:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. HOUDEK**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWIN VALLADARES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1211-CR-568 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila Carlisle, Judge
Cause No. 49G03-1202-FA-11493

**July 5, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Edwin Valladares ("Valladares") appeals his convictions, following a bench trial, for five counts of Class A felony child molesting,[1] two counts of Class C felony child molesting,[2] and one count of Class B misdemeanor voyeurism.[3]

We affirm.

## ISSUE

Whether sufficient evidence supports Valladares' convictions.

## FACTS

In 2002, Valladares married his wife, Tarlanda Valladares ("Tarlanda") who had three daughters from a previous relationship: D.C., M.C. and S.C. Tarlanda also had two nephews for whom she provided care from 2001-2009. Valladares and Tarlanda later had two daughters together, D.V. and A.V.

In the spring of 2004, the family moved into a home on Belmar Avenue. When the family first moved into the home the nephews slept in the basement. Nine year old D.C., seven year old M.C., and ten year old S.C. all shared one of three bedrooms on the main floor. D.C. slept by herself, while M.C. and S.C. shared a bunk bed. On at least one occasion during this time, D.C. testified that Valladares came into the room at night and "was touching, feeling and putting his hand inside . . . the place I pee out of." (Tr. 42).

---

[1] Ind. Code § 35-42-3 (a)(1).

[2] I.C. § 35-42-4-3 (b).

[3] I.C. § 35-45-4-5.

After a couple of nights, D.C. moved into another bedroom on the main floor with her infant sister D.V. While in this room, Valladares would enter the room at night, remove her clothes, and insert his fingers inside her vagina, causing pain that would awake D.C. from her sleep. On at least one occasion, Valladares entered the room at night, pulled down D.C.'s pants and placed his tongue on her vagina. Also during this time, Valladares would call D.C. into his room claiming to "clean her out" by putting his finger insider her vagina. (Tr. 44).

In February 2009, Tarlanda's nephews moved out of the house and thirteen year old D.C. and eleven year old M.C. moved into the basement rooms where the boys had previously stayed. During the time that M.C. shared a room in the basement with D.C., she stayed home from school due to illness. While their mother was at work, Valladares entered the room and placed his hands on M.C.'s chest. On at least one other occasion, Valladares entered M.C.'s room and groped her chest, but he heard a noise and ran out. On a separate occasion, M.C. had just exited the shower and found Valladares in her room, where he pushed her onto the bed and penetrated her "private areas" with his fingers. (Tr. 80).

Later, D.C. caught Valladares looking at her from the outside of the house, through the bathroom window, while she was taking a shower. After this period of time, Valladares began to smell D.C.'s underwear. D.C. felt especially violated by Valladares going through her underwear and, in February 2012, reported the occurrence to her Aunt Kelina Martz ("Aunt Kelina"). Aunt Kelina asked M.C. if Valladares had also touched

3

her. M.C. stated that he had. Aunt Kelina immediately reported the incidents to the police who began an investigation.

On February 23, 2012, the State filed fifteen charges against Valladares, including eight counts of child molesting as Class A felonies, four counts of child molesting as Class C felonies, two counts of sexual misconduct with a minor and a one count of voyeurism as a Class B misdemeanor. The State dismissed four of the counts on Sepetember 27, 2012.[4]

On October 1, 2012, just prior to jury selection, Valladares waived his right to a jury trial and a bench trial was held on the remaining counts. At trial, D.C. and M.C. both testified that Valladares had molested them on multiple occasions while living at the house on Belmar Avenue. Neither girl testified that they had witnessed the abuse of each other or any other children. Tarlanda also testified that on at least one occasion, she witnessed Valladares "jumping from a chair outside of the bathroom window." (Tr. 111). When she questioned him about what he was doing, he stated that he was outside using the bathroom. Additionally, Tarlanda testified that she had suspicions about Valladares due to changes in the girls' behavior. She questioned her daughters and Valladares, but each denied that anything happened. D.C. testified that she did not tell her mother about the abuse for fear that she would believe Valladares and not her. At trial, the detective investigating the case testified that during the execution of the search warrant, he found a step ladder under the window just as D.C. had told them in the initial interview.

---

[4] The State dismissed all counts relating to abuse against S.C. Those counts included two Class A felony child molesting charges and two Class C felony sexual misconduct with a minor charges (Counts 5-8). The State filed a motion to amend the charging information. The motion was granted, but the trial court did not change the original numbering system of the charges.

Based on the evidence presented, the trial court found that the State had proven its case beyond a reasonable doubt. Valladares was found guilty of five counts of Class A felony child molesting, two counts of Class C felony child molesting, and one count of Class B misdemeanor voyeurism. He was found not guilty on two Class A felony child molesting charges and one Class C felony child molesting charge. On October 16, 2012, the trial court sentenced Valladares to sixty (60) years in the Department of Correction and ordered him not to have any contact with the D.C, M.C., and any member of their household.

## DECISION

Valladares argues that the State failed to present sufficient evidence to support his Class A felony child molesting conviction, as charged in Count 13. Additionally, he argues that as to the remaining charges, the victims' testimony was incredibly dubious thus creating a reasonable doubt as to the evidence. Specifically, he contends that D.C. and M.C.'s testimony was incredibly dubious because each sister testified about her individual abuse. Further, because the abuse occurred in a shared room without any other child noticing it, creates a reasonable doubt. We disagree.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every

reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Further, "[a] molested child's uncorroborated testimony is sufficient to sustain a conviction." *Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001), *reh'g denied, cert. denied.*

To convict Valladares of the Class A felony child molesting, as charged in Count 13, the State was required to prove beyond a reasonable doubt that, between June 14, 2006 and June 13, 2009, Valladares, who was at least twenty-one (21) years of age, performed deviate sexual conduct with D.C., a child fourteen (14) years or younger by inserting his finger into her vagina. Ind. Code § 35-42-4-3. Deviate sexual conduct is defined as an act involving a sex organ of one person and the mouth or anus of another person. Ind. Code § 35-31.5-2-94.[5] In addition, deviate sexual conduct is also defined as "an act involving . . . the penetration of the sex organ . . . of a person by an object." I.C. § 35-31.5-2-94 (2). A finger is considered an object for the purpose of criminalized sexual assaults. *Harwood v. State*, 555 N.E.2d 513, 515 (Ind. Ct. App. 1990)

Valladares contends that the State failed to prove, beyond a reasonable doubt, the element of D.C.'s age to sustain the Class A felony child molesting charge in Count 13. He claims that D.C. testified that she was about fifteen years old when she and her sisters first moved to the basement. Though D.C. testified that she was "about 15" when she moved into the basement, she also stated that many of the occurrences of  abuse

---

[5] At the time of the offense, the definition of "deviate sexual conduct" was codified at Ind. Code § 35-41-1-9.

happened prior to her moving to the basement. (Tr. 57). Specifically D.C. testified that Valladares began molesting her in 2004, when she was eight or nine, and that the abuse continued up until she was around fourteen, when she was moved to the basement. D.C. testified that the molestation "hadn't happened in a long time" by the time she told her Aunt Kelina in early 2009. (Tr. 65). The chronology of D.C.'s testimony alludes to the fact that the abuse had ceased by the time she was 12 or 13, with the exception of Valladares sniffing her panties. Because a child's testimony, whether uncorroborated or not is enough to sustain a conviction, the State did prove the elements of child molestation beyond a reasonable doubt. *See Carter*, 754 N.E.2d at 880.

Valladares next argues that the State failed to present sufficient evidence on his other convictions because the testimony of both D.C. and M.C. was incredibly dubious. Under the incredible dubiosity rule, a court may impinge upon a jury's function to judge the credibility of a witness. If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002). This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id.* at 810.

In support of his incredible dubiosity argument, Valladares asserts that because neither sister testified or witnessed the abuse of the other, the Court should find that their

7

testimony was incredibly dubious. The incredible dubiosity rule pertains to a sole witness' testimony, not the testimony of two witnesses compared against one another. Valladares fails to show that D.C. or M.C's testimony was coerced or that it was inherently improbable or contradictory. Valladares' argument is nothing more than an invitation for this Court to reweigh the evidence and judge the credibility of the witnesses, which we decline to do. *See Drane*, 867 N.E.2d at 146. Both victims' testimony was corroborated by the testimony of Tarlanda, Aunt Kelina, and the other evidence submitted by the State. The trial judge, as trier of fact, believed D.C. and M.C.'s testimony. We decline to impinge on the trial judge's credibility determination.

As a result, the State presented sufficient evidence for the trial court to conclude, beyond a reasonable doubt, that Valladares was guilty of five counts of Class A felony child molesting, two counts of Class C felony child molesting and one count of Class B misdemeanor voyeurism. Therefore, we affirm the trial court's decision.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.