Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 02 2014, 5:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY BURNS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLOTTE WIGGINS | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1311-CR-972 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy Jones, Judge
Cause No. 49F08-1308-CM-47759

**July 2, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Charlotte Wiggins appeals her conviction for criminal mischief as a class B misdemeanor. Wiggins raises one issue, which we revise and restate as whether the evidence is sufficient to sustain her conviction. We affirm.

Wiggins is the niece of Lydia Smith, and in July 2013 Wiggins lived with her mother and sister. On July 7, 2013, Smith arrived at the Wiggins's house to pick up Wiggins's mother for church and honked the horn of her vehicle but Wiggins's mother did not come out. Smith entered the house, noticed that Wiggins's mother was not ready to leave, and asked why one of her daughters "didn't help [her] get ready." Transcript at 7. Wiggins stated "b----, she don't need no help to get ready; she ain't handicapped." Id. at 8. Smith told Wiggins that she was not talking to her, Wiggins told Smith to "get out of there," and, when Smith did not leave, Wiggins "popped [her]," Smith "popped her back," they "tied up," and Wiggins's sister "ran in and broke" up the altercation. Id. Wiggins stated "'B', you done hit me in my eye, I'm going downstairs, and I'm going to key your car." Id. Wiggins exited the house, and Smith looked out the window and observed Wiggins start from near the front of her vehicle and "pull[] back to [her] back door." Id. at 9. Wiggins entered the house, Smith told Wiggins's mother that she was going to have Wiggins arrested, and Wiggins said "if you fool with me I'll go back out there and slash your tires." Id.

On August 15, 2013, the State charged Wiggins with criminal mischief as a class A misdemeanor. On October 30, 2013, the court conducted a bench trial at which it heard the testimony of Smith and Wiggins and the State presented evidence of the damage to Smith's vehicle. Smith testified to the above facts and that she paid a one hundred dollar deductible

2

to repair the damage to her vehicle.  Wiggins testified that she was sleeping when Smith entered the house, that Smith "came in the house and as usual she wants to run everything," stating "[y]'all need to be getting up and helping your momma," that she told Smith "my momma don't need no help, she's not handicapped," that she told Smith to leave her bedroom, and that Smith said "put me out."  Id. at 19.  Wiggins also testified that she approached Smith told her to leave her room, that "before I knew it she hit me with her right in my eye," and that she hit Smith back.  Id. at 20.  Wiggins then testified that Smith "had took her clothes off wanting to fight me so she wouldn't mess up her church clothes."  Id. at 22.  When Wiggins was asked what she was wearing that morning, Wiggins stated "[p]anties," and when asked "[s]o other than your underwear you were completely naked," Wiggins replied "[t]hat's how I sleep . . . ."  Id. at 25.  The State called Smith as a rebuttal witness and elicited testimony that Wiggins was wearing "an old duster" at the time of the altercation and when she went outside.  Id. at 26.  The court found Wiggins guilty of the lesser included offense of criminal mischief as a class B misdemeanor and sentenced her to 180 days with 178 days suspended to probation and ordered her to complete twenty-four hours of community service work and pay restitution of one hundred dollars.

The issue is whether the evidence is sufficient to sustain Wiggins's conviction for criminal mischief.  When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict.  Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess witness credibility or reweigh the evidence.  Id.  We consider conflicting evidence most favorably to

3

the trial court's ruling.  Id.  We affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  Id.  It is not necessary that the evidence overcome every reasonable hypothesis of innocence.  Id. at 147.  The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.  Id.

The offense of criminal mischief is governed by Ind. Code § 35-43-1-2, which provides in pertinent part:

(a)    A person who:

(1)    recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent; or

(2)    knowingly or intentionally causes another to suffer pecuniary loss by deception or by an expression of intention to injure another person or to damage the property or to impair the rights of another person;

commits criminal mischief, a Class B misdemeanor. . . .

The State's charging information for criminal mischief provided in relevant part that Wiggins "did without the consent of Lydia Smith, recklessly or knowingly damage that person's property, to wit: 2003 Mercedes by scratching with an unknown object . . . ." Appellant's Appendix at 13.  In order to convict Wiggins of criminal mischief as a class B misdemeanor, the State needed to prove that she recklessly or knowingly damaged Smith's vehicle by scratching it without Smith's consent.

Wiggins contends the incredible dubiosity rule is applicable in this case and that Smith's testimony was not believable.  Wiggins notes that she testified that Smith's "story

4

was a lie" and argues that Smith's version of events "simply does not make any sense and is inconsistent with her oral version of events." Appellant's Brief at 6. She posits that "[t]he question is how probable is it that [Smith] would get into a fight or rumpled in a fight, but not try to stop that same niece from damaging her Mercedes" and that "[n]o reasonable person could believe a person who removes her clothing in order to fight would not take steps to protect her valuable property." Id. at 7. The State maintains that there is nothing inherently contradictory or equivocal about Smith's testimony which merely described Wiggins's childish and criminal behavior. The State also contends that Wiggins's argument related to Smith removing her clothes is misplaced, that Smith did not testify that she removed any of her clothes, and that it was Wiggins who provided the testimony about Smith removing her clothing to fight her.

To the extent Wiggins asserts that the incredible dubiosity rule requires reversal of her conviction, we note that the rule applies in only very narrow circumstances. Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Id.

Wiggins fails to show that the testimony of Smith was inherently contradictory. To the extent Smith's testimony conflicted with Wiggins's testimony or Wiggins argues that

5

Smith's testimony was less believable, we note that these are issues of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. Whited v. State, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence and judge the credibility of the witnesses. See Drane, 867 N.E.2d at 146. Further, we cannot say that Smith's testimony that Wiggins went outside following an altercation with Smith and scratched Smith's vehicle was so inherently improbable that no reasonable person could believe it, that the testimony against her was internally inconsistent, or that Smith's testimony was incredibly dubious. Based upon the evidence and testimony most favorable to the conviction, we conclude that sufficient evidence exists from which the trier of fact could find Wiggins guilty beyond a reasonable doubt of criminal mischief as a class B misdemeanor.

For the foregoing reasons, we affirm Wiggins's conviction for criminal mischief as a class B misdemeanor.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.