## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Douglas R. Long
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marvin Hester,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 17, 2015

Court of Appeals Case No.
48A02-1501-CR-28

Appeal from the Madison Circuit Court

The Honorable Angela Warner Sims, Judge

Trial Court Cause No.
48C01-1309-FD-1712

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Marvin Hester was convicted of pointing a firearm at another person, a Class D felony. He raises two issues for our review, which we consolidate and restate as whether the evidence is sufficient to sustain his conviction. Concluding the evidence was sufficient to prove Hester's guilt beyond a reasonable doubt, we affirm.

# Facts and Procedural History

[2] In August of 2013, Hester lived with his mother, Deborah Hester, in her residence in Anderson, Indiana. On August 31, police were called to the residence following a report of a son pointing a firearm at his mother. When police arrived, Deborah explained Hester pointed a firearm at her while she was in the home office. Further, after learning the police had been called, Hester took the firearm apart and then wiped it clean, leaving "bullets on the floor . . . ." Transcript at 138. Hester denied the presence of a firearm in the residence, but police discovered five .25 caliber bullets—four being found in the hallway "just outside the door of the office"— a firearm magazine, and an unloaded .25 caliber firearm located "underneath a reclining-type sofa in the living room or family room of the home." *Id.* at 184, 189. Hester was arrested.

[3] The State charged Hester with pointing a firearm at another person, and a bench trial was held. On direct examination, Deborah consistently testified Hester pointed a firearm at her:

[State:] [A]nd after this point in time . . . you talked about the . . . handgun. Can you go back to that and . . . tell the court what happened?

[Deborah:] After I threw the things at him, he left the room, and he came back and he had a hand gun [sic], and he pointed it at me.

* * *

[State:] And when he pointed the handgun at you, was he standing up?

[Deborah:] Yes.

* * *

[State:] Uh, what do you recall seeing of the handgun that you can talk about now in court?

[Deborah:] That it was being pointed at me.

*Id.* at 133, 135, 136. On cross-examination, Hester's counsel attempted to impeach Deborah's credibility by addressing her history of mental illness and ability to accurately recall the altercation. Specifically, counsel questioned whether the firearm was pointed directly at her:

[Defense Counsel:] You told the police that, um, [Hester] had a gun and was pointing it at you. When . . . you told the police that he was pointing the gun at you, was it pointed in your direction?

[Deborah:] Um, I don't recall. I just recall the gun pointing into the room.

[Defense Counsel:] But you don't recall if it was pointed at you?

[Deborah:] I recall it being pointed into the room.

*Id.* at 164. However, when questioned on re-direct, Deborah recalled telling police Hester pointed a firearm at her. Moreover, Deborah appeared conflicted about testifying against her son:

[State:] [D]id you indicate to me, um, that you didn't want to testify against your son?

[Deborah:] Yes, I did.

[State:] And is that still how you feel?

[Deborah:] Yes, it is.

[State:] And you don't want to see anything happen to your son, is that correct?

[Deborah:] That's the truth.

[State:] And when I say "anything happen" I mean . . . through the legal process.

[Deborah:] That's the truth.

*Id.* at 170-71.

[4] Responding Officer Jon Bell testified that when police arrived, Deborah explained there had been a heated altercation resulting in Hester pointing a firearm at her. Upon learning of the firearm, Officer Bell began a search of the residence. According to Officer Bell, Deborah was so adamant the firearm remained in the residence, she crawled through a bedroom window to gain access to Hester's room, which had been locked. Officer Bell testified that after discovering the firearm, bullets, and magazine scattered throughout the residence, he recognized the firearm and bullets were of the same caliber.

[5] The trial court found Hester guilty of pointing a firearm at another person. Hester was sentenced to 1,095 days, with 180 days executed in the Indiana Department of Correction and the remainder served through a community corrections program. Hester now appeals his conviction.

# Discussion and Decision

## I. Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, a reviewing court shall consider only the probative evidence and reasonable inferences supporting the judgment. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). The court neither reweighs the evidence nor reassesses the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Instead, the court should affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Drane*, 867 N.E.2d at 146-47 (citation omitted).

## II. Sufficiency of the Evidence

### A. Incredibly Dubious Testimony

Hester claims Deborah's testimony was insufficient to support his conviction because the testimony was inherently contradictory and equivocal. Specifically, Hester cites his mother's poor memory, history of mental illness, and inconsistent statements as to whether the firearm was pointed at her.

The incredible dubiosity rule allows a reviewing court to "impinge upon a [fact finder's] responsibility to judge the credibility of the witnesses only when confronted with inherently improbable testimony." *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (citations and internal quotation marks omitted). Therefore, "[a]pplication of this rule is rare and the standard to be applied is

whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). In *Moore*, our supreme court stated the appropriate scope of the incredible dubiosity rule, which requires: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." 27 N.E.3d at 756. If any one factor is lacking, application of the incredible dubiosity rule is precluded. *Id.* at 758.

[9] As noted above, Deborah initially told the police and later testified Hester pointed a firearm at her. On cross-examination, however, Deborah became unsure, testifying she only remembered the firearm being pointed into the room where she sat. Hester claims this testimony is inherently contradictory, but we disagree. Deborah told the police Hester pointed a firearm at her. She testified Hester pointed a firearm at her. Deborah never testified the firearm was *not* pointed at her; on-cross examination, she simply stated she could not recall. As the trial court noted in its decision, the statements were merely different "characterizations as to what happened that were crafted by . . . counsel in the way questions were posed." Tr. at 270. Further, a reasonable person could believe Deborah's varying characterizations were due to her poor memory, history of mental illness, and reluctance to see her son suffer any legal consequences. Ultimately, the trial court deemed Deborah's testimony credible, noting she "never relinquished from the fact" she told police Hester

pointed a firearm at her, and, at trial, "never indicated that's not what happened." *Id.* at 270.

[10] We conclude Deborah's testimony is not so "inherently improbable that no reasonable person could believe it." *Love*, 761 N.E.2d at 810. Accordingly, it would be inappropriate for this court to impinge on the trial court's responsibility to judge the credibility of a witness. *See Moore*, 27 N.E.3d at 760. Deborah's testimony is neither inherently contradictory nor equivocal. Because at least one *Moore* factor is not satisfied, Deborah's testimony is not incredibly dubious.

## B. Loaded Firearm

[11] Hester claims the evidence is insufficient to support his conviction because the State failed to prove beyond a reasonable doubt the firearm was loaded. "A person who knowingly or intentionally points a firearm at another person commits a Class D felony. However, the offense is a Class A misdemeanor if the firearm was not loaded." Ind. Code § 35-47-4-3(b) (2013). Obtaining a Class D felony conviction does not necessarily require the State to prove the firearm was loaded. *Adkins v. State*, 887 N.E.2d 934, 937 (Ind. 2008).

[12] If a defendant is charged with the Class D felony, but seeks to be convicted of the Class A misdemeanor, "the defendant must place the fact of the gun having been unloaded at issue if the State's evidence has not done so." *Id.* at 938 (holding the fact that a gun is unloaded is a "mitigating factor" rather than an affirmative defense). The fact "is at issue if there is some evidence from which

the jury can draw a conclusion that the weapon was unloaded." *Scott v. State*, 924 N.E.2d 169, 176 (Ind. Ct. App. 2010), *trans. denied*, *cert. denied*, 562 U.S. 1152 (2011). Once at issue, the State must prove the firearm was loaded beyond a reasonable doubt. *Adkins,* 887 N.E.2d at 938.

[13] In the present case, it is not necessary to determine whether the fact that the firearm was loaded was at issue. Hester fails to cite to any part of the record indicating where the fact comes into question. Nonetheless, assuming the fact was at issue, and the State was required to prove the firearm was loaded beyond a reasonable doubt, there is ample evidence in the record to support such a finding. Deborah testified that Hester pointed a firearm at her while she was in the home office. After she threatened to call police, Hester took the firearm apart—leaving "bullets on the floor"—and wiped it clean with a rag. Tr. at 138. Hester told police there was no firearm in the residence, but police discovered a hidden firearm, bullets, and magazine in, and near, the home office. The bullets were the same caliber as the firearm. These facts, taken together with the entirety of the record, would support a finding beyond a reasonable doubt the firearm was loaded when pointed at Deborah.

[14] Hester's arguments merely invite this court to reweigh the evidence and reassess the credibility of witnesses. In accordance with our standard of reviewing sufficiency claims, we credit the trial court's findings as to the evidence and credibility of witnesses. Accordingly, the evidence is sufficient to sustain Hester's conviction as a Class D felony.

# Conclusion

Application of the incredible dubiosity rule is precluded because Deborah's testimony was not inherently contradictory. Additionally, regardless of whether the firearm being loaded was at issue, the evidence was sufficient to show the firearm was loaded when Hester pointed it at his mother. Accordingly, we conclude a reasonable fact-finder could find beyond a reasonable doubt the elements of pointing a firearm at another person. Hester's conviction is affirmed.

Affirmed.

Vaidik, C.J., and Pyle, J., concur.