## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 30 2017, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sally Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Phillip Edwin Byrd,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | May 30, 2017<br><br>Court of Appeals Case No.<br>71A03-1609-CR-2218<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable Julie Verheye,<br>Magistrate<br><br>Trial Court Cause No.<br>71D03-1604-CM-2204 |

**Brown, Judge.**

[1] Phillip Edwin Byrd appeals his conviction for invasion of privacy as a class A misdemeanor. Byrd raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

### Facts and Procedural History

[2] On December 9, 2015, D.H. received a number of phone calls from Byrd, who was the father of her three children, despite the fact that D.H. had a no-contact order against Byrd. Byrd told D.H. that he wanted to see her and her children and that he knew where she lived, although she had never told him the location of her home. These calls came during a period of about twenty minutes.

[3] Following the series of phone calls, D.H. "heard somebody rattling at [her] door," and she called the police. Transcript Volume 2 at 10. South Bend Police Officer Jeff Cummins was dispatched to her home, and when he arrived he observed that D.H.'s back door had marks indicating that someone had attempted to pry it open.

[4] On May 6, 2016, the State charged Byrd with invasion of privacy as a class A misdemeanor. On August 16, 2016, the court held a bench trial at which D.H., Officer Cummins, and Byrd testified. Officer Cummins testified that he was not able to view the call log on D.H.'s phone because "[h]er screen was all cracked so it wasn't able to be viewed. She could just receive calls." *Id.* at 7. The court found Byrd guilty, noting that it believed D.H.'s testimony that she had received phone calls from him on the evening in question. On August 24, 2016, the court sentenced Byrd to 180 days.

*Discussion*

The issue is whether the evidence is sufficient to sustain Byrd's conviction for invasion of privacy as a class A misdemeanor. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147. The uncorroborated testimony of one witness can be sufficient to sustain a conviction. *Ferrell v. State*, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

The offense of invasion of privacy is governed by Ind. Code § 35-46-1-15.1 which at the time of the offense provided in part that "[a] person who knowingly or intentionally violates: (1) a protective order to prevent domestic or family violence issued under IC 34-26-5 . . . commits invasion of privacy, a Class A misdemeanor."[1] The charging information provides that "Byrd did knowingly violate a protective order to prevent domestic or family violence

---

[1] Subsequently amended by Pub. L. No. 65-2016, § 37 (eff. July 1, 2016).

issued under I.C. 34-26-5 . . . to protect [D.H.], to-wit: by making phone calls to [D.H.]." Appellant's Appendix Volume 2 at 5.

[7] Byrd argues that the State failed to prove that he committed invasion of privacy because its case was based entirely on the testimony of D.H., whose testimony was "equivocal when looking at the totality of the circumstances," that no witness placed Byrd at the scene, and that D.H.'s testimony is incredibly dubious. Appellant's Brief at 7. The State argues that it proved each element of invasion of privacy beyond a reasonable doubt and that Byrd's arguments are merely a request to reweigh the evidence.

[8] Byrd asserts that the incredible dubiosity rule requires reversal of his convictions. We note that the rule applies only in very narrow circumstances. *See Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Id.* The Indiana Supreme Court in *Smith v. State*, 34 N.E.3d 1211 (Ind. 2015), recently addressed the rule as follows:

Application of the incredible dubiosity rule is limited to cases with very specific circumstances because we are extremely hesitant to invade the province of the jury. We recently summarized that, to warrant application of the incredible dubiosity rule, there must be: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015). In applying this summary in *Moore*, this Court found the first factor not met because "there were multiple testifying witnesses that the jury could have relied upon in reaching its verdict." *Id.* at 757-58. In discussing inherent probability as the second factor, we found in *Moore* that it was satisfied only when the witness's trial testimony was inconsistent within itself, not that it was inconsistent with other evidence or prior testimony. *Id.* at 758-59. Finally, in applying the third factor, absence of circumstantial evidence, we evaluated whether there existed circumstantial evidence of guilt, but did not require such circumstantial evidence to independently establish guilt. *Id.* at 759-60.

34 N.E.3d at 1221.

[9] Byrd fails to show that the testimony of D.H. was inherently contradictory. To the extent D.H.'s testimony conflicted with the testimony of Byrd, or Byrd argues that D.H.'s testimony was not believable or less believable than his testimony, we note that these are issues of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this Court. *Whited v. State*, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence or judge the credibility of the witnesses. *See Drane*, 867 N.E.2d at 146. Further, we cannot say that D.H.'s testimony that Byrd phoned her multiple

times and that she recognized his voice on the phone was so inherently improbable that no reasonable person could believe it. D.H. testified that she had known Byrd for six years and that Byrd was the father of her three children. Byrd does not show how the testimony against him was somehow internally inconsistent and has not shown D.H.'s testimony to be incredibly dubious.

Also, to the extent that Byrd focuses his argument on the fact that there was not a witness to place him at the scene, we observe that the charging information charged the crime based upon the phone calls he made to D.H. D.H. testified that he called her multiple times on December 9, 2015, and that he told her he knew where she lived and that he wanted to see her and their children. Further, Byrd acknowledged at trial that there was a protective order against him for the protection of D.H.

Based upon our review of the evidence and the testimony most favorable to the conviction as set forth in the record and above, we conclude that sufficient evidence exists from which the trier of fact could find Byrd guilty beyond a reasonable doubt of invasion of privacy as a class A misdemeanor. *See Stephenson v. State*, 742 N.E.2d 463, 487 (Ind. 2001) (holding that inconsistencies in the testimony of two or more witnesses go to the weight of the evidence and credibility of the testimony of each individual witness, and such inconsistencies do not make the evidence "incredible" as a matter of law), *cert. denied*, 534 U.S. 1105, 122 S. Ct. 905 (2002); *White v. State*, 846 N.E.2d 1026, 1032 (Ind. Ct. App. 2006) (finding that the incredible dubiosity rule was inapplicable and that by claiming contradictory testimony, instead of inherent

contradictions within one witness's own testimony, the defendant was asking the court to reweigh the evidence and assess the credibility of witnesses), *trans. denied*.

## *Conclusion*

[12] For the foregoing reasons, we affirm Byrd's conviction for invasion of privacy as a class A misdemeanor.

[13] Affirmed.

May, J., and Pyle, J., concur.