## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 11 2018, 8:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derek J. Bell, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | September 11, 2018 <br><br> Court of Appeals Case No. <br> 71A05-1711-CR-2687 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable John M. <br> Marnocha, Judge <br><br> Trial Court Cause No. <br> 71D02-1701-F4-4 |

**Brown, Judge.**

[1] Derek J. Bell appeals his conviction for burglary as a level 4 felony. He raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

## *Facts and Procedural History*

[2] On the morning of January 12, 2017, Bell went to the apartment of Demetrius Brooks, Sr., who lived in an apartment below the apartment of Bell's girlfriend, and they talked and smoked marijuana. At some point, Bell left the apartment, and Brooks went to Chicago around 3:00 or 4:00 p.m. When Brooks returned home around midnight, he noticed his air conditioning unit was "pushed in and out the window," went inside, and noticed everything was broken and that items, including cash, were missing. Transcript Volume II at 15. Brooks went to his neighbor's door and Bell and Tasha Garret answered the door. Bell and Garret went to Brooks's apartment, and Bell asked Brooks why he did not tell him he was going out of town.

[3] Brooks called his brother who had previously helped him install security cameras. Brooks reviewed the security footage and observed his dresser fall and a person enter his apartment through a window. At one point in the video, Brooks's brother paused the video, and Brooks identified the person as Bell because he had on the same pants and shoes he had just seen him wearing. After watching the video, Brooks sat and thought and eventually called the police.

[4] South Bend Police Officers Nathan Gates and Joseph Carey responded to the scene shortly before 5:00 a.m. The officers spoke with Brooks who was "getting his video surveillance ready," and then went upstairs to speak with Bell, who was the person Brooks said had broken into his apartment. *Id.* at 72. After speaking with Bell, Officer Carey watched the video and took screenshots of the video. At some point, Bell admitted to taking marijuana from Brooks's apartment.

[5] On January 13, 2017, the State charged Bell with burglary as a level 4 felony. On July 12 and 13, 2017, a jury trial was held. Brooks testified that pushing in the air conditioner was the only way one could possibly enter his house because he had two pit bulls on his front porch and that his dresser was pinned to the front door so his dogs could not enter. The court admitted photographs from the security footage, and Brooks stated that he recognized the face and "I cut that face. I cut his hair. That's him leaving. That's him. Once he went in my closet, he came back past. That's him leaving out of my room." *Id.* at 30-31. When asked if he was able to make a copy of the video, Brooks answered: "No, ma'am. The way my set up is at, it's just constantly on a record and if you don't have that USB chip thing, it just wipes it out." *Id.* at 33. He also stated that he did not have the equipment to make a recording.

[6] On cross-examination, Bell's counsel asked Brooks why he waited four and one-half hours to call the police, and Brooks answered: "Why should I? Why? I knew who broke in my house." *Id.* at 53. When asked if he was going to prosecute Bell or have him arrested, Brooks answered:

No I'm not going to prosecute or arrest. When [sic] I'm from sir, stealing don't hold no consequences. I'm not no – you know what I'm saying? I knew who broke up in my house. I wasn't thinking. I was thinking about all types of crazy stuff up in my head to go upstairs and do – when I saw this dude break in my house. The same dude that I give clothes off my back for. When he need anything from me, I give to him. So it took me a minute to think about what I wanted to do. And when I thought about what I wanted to do was to call the police and that's what I did.

*Id.* at 53. He added that "[b]ecause when my brother stopped the picture, it was clear as day is his face." *Id.* at 54. He also testified that Bell loved orange, that his hat was orange, and that he recognized that hat. He also testified that Bell told the police that he broke into his house and stole marijuana. When Bell's counsel asserted that the police told him it was Bell, Brooks stated:

Factually, 100 percent – no. I told the cops who that was. They went upstairs and got him. I told the cops that was Derek Bell. That's the guy who broke in my house. They asked me where he stay at. The guy is upstairs. I feel threatened. You all need to go get him up out of this building. That's what I told the police. I told the police where he was.

*Id.* at 56.

[7] Officer Carey testified that he spoke with Bell and watched the video and that the person in the video matched the person he had seen upstairs. Officer Gates testified that Bell at one point told him that he took some marijuana but not money, that Officer Gates "said something along the lines of breaking into the house to steal weed," and that Bell said "it wasn't even worth it." *Id.* at 121.

Officer Gates testified that he believed the suspect in the video was Bell. The jury found Bell guilty as charged, and on August 23, 2017, the court sentenced him to eight years in prison.

## Discussion

[8] The issue is whether the evidence is sufficient to sustain Bell's conviction for burglary as a level 4 felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[9] Ind. Code § 35-43-2-1 provides that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary" and that "the offense is . . . a Level 4 felony if the building or structure is a dwelling . . . ."

[10] Bell argues that the State did not prove that he was the person who broke and entered Brooks's apartment. He asserts that Brooks's testimony was inherently improbable "given the picture exhibits, the lack of physical evidence linking [him] to the crime, and the length of time Brooks took to notify the police." Appellant's Brief at 7. Bell contends that Brooks's testimony was incredibly dubious. He asserts that he was arrested "after admitting to taking weed from

Brooks' apartment but not to breaking into the apartment." *Id.* at 8.  The State argues that the testimony as to Bell's identity was not incredibly dubious and that the evidence was sufficient.

[11] To the extent Bell asserts that the incredible dubiosity rule requires reversal of his conviction, we note that this rule applies only in very narrow circumstances. *See Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002).  The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed.  This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.  Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Id.*  Bell fails to show that Brooks's testimony was inherently contradictory or so inherently improbable that no reasonable person could believe it.

[12] Based upon our review of the record, including the testimony of Brooks, Officer Carey, and Officer Gates, we conclude that the State presented evidence of a probative nature from which a trier of fact could find beyond a reasonable doubt that Bell committed the offense of burglary as a level 4 felony.

## *Conclusion*

[13] For the foregoing reasons, we affirm Bell's conviction of burglary as a level 4 felony.

Affirmed.

Altice, J., and Tavitas, J., concur.