# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 24 2019, 7:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Daniel Hageman
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cynthia Gonzalez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 24, 2019

Court of Appeals Case No.
18A-CR-2046

Appeal from the Marion Superior
Court

The Honorable Peggy R. Hart,
Magistrate

Trial Court Cause No.
49G10-1802-CM-6257

**Mathias, Judge.**

[1] Gonzalez appeals her criminal mischief conviction from the Marion Superior Court. She argues the conviction is not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] On May 9, 2017, Tyler Walker ("Walker") was leaving the parking lot of an Indianapolis Walmart. As Walker was backing out of her parking spot in her Ford Focus, a small, red Honda approached quickly, and the two cars almost came into contact. The Honda stopped and waited for Walker to finish backing out of her parking spot.

[4] However, a male passenger exited the Honda and walked toward Walker's vehicle. Walker also observed the passenger and the female driver communicating. Fearing for her safety, Walker attempted to drive around the unknown male and the Honda. The passenger got back into the Honda, and Walker was able to slowly drive away. The two vehicles were close to one another; however, the driver of the Honda opened her door. Walker heard what she believes was a key pressed against her car as she drove by and a sound she describes as "like nails on chalk board." Tr. p. 35. She then saw the driver of the Honda close her car door and speed away.

[5] Walker stopped her vehicle again to observe the damage. After seeing the key mark, Walker got back into her vehicle and began to follow the Honda. She obtained the license plate information and relayed this to the police, whom she had called. Police instructed Walker to stop following the Honda, and she did.

[6] Detective Stephen Carroll ("Detective Carroll") from the Indianapolis Metropolitan Police Department was assigned to the matter. Police were able to

obtain BMV records showing the registered owner of the Honda was Cynthia Gonzalez. The detective had also obtained surveillance video from Walmart, and while the video showed the incident, it was not possible to identify the individuals from the video. Three days after the incident, Walker met with Detective Carroll.

[7] When Walker met with the Detective, she identified Cynthia Gonzalez out of a photo array line up. Tr. pp. 51–53; Ex. Vol., State's Exs. 6–8. Walker also gave a taped statement of the events. While taking this taped statement, the detective confirmed with Walker that she picked "the right person." Tr. p. 25. After the detective had told her she had picked the "right" person, she responded, saying "good – because I was only about sixty percent sure." *Id.* Defense counsel deposed Walker about year after Walker had identified Gonzalez. During this deposition, Walker also stated that "a lot of Mexican females, personally to me, look identical." Tr. p. 27.

[8] However, at trial, Walker was much more certain that she had identified the right person, saying,

> Now that I have seen her in person, I know that was her. In the pictures that I circled, she wasn't wearing glasses. So it was a little bit harder to identify. Uh, but now that I've seen her in person, yes I can fully identify her; and that was her who damaged my car.

Tr. p. 30. Detective Carroll had no recollection of a confidence issue when Walker identified Gonzalez out of the photo array. A bench trial was held on

July 30, 2018, and at the conclusion of the bench trial, Gonzalez was convicted of criminal mischief as a Class B Misdemeanor. Gonzalez now appeals.

# Discussion and Decision

[9] When reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom, and we will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. *Id.* Reversal is appropriate only when a reasonable trier or fact would not be able to form inferences as to each material element of the offense. *Id.*

[10] Here, the conviction is supported by substantial evidence. Walker was able to identify Gonzalez as the defendant out of a photo array of six individuals with similar features. While she had some doubt at the time she identified Gonzalez, Walker testified she was confident she had the correct individual once she was able to see Gonzalez in person at court. The State introduced evidence of the scratch on the car as well as an estimate for repair. While this estimate also contained costs of repair work that was not claimed to be as a result of the acts of the Defendant, a reasonable trier can deduce the cost of repair for the scratch on the car. Indiana Bureau of Motor Vehicle ("BMV") records showed that the defendant was the registered owner of the Honda being driven that day. Gonzalez raises the question of whether she was actually the individual driving

her car that day; however, given the positive identification and that Gonzalez is the registered owner of the vehicle being driven in the Walmart parking lot during the events in question, we conclude that there was substantial evidence of probative value to support the conviction.

[11] Gonzalez also argues that Walker's identification of her in the photo array is incredibly dubious. The incredible dubiosity standard is a difficult standard to meet and requires great ambiguity and inconsistency in the evidence. *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015). It applies only in limited circumstances. *Id.* at 754. "For the incredible dubiosity rule to apply, the evidence presented must be so unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone." *Id.* at 751.

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (quoting *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002)).

[12] Although Walker had some admitted doubt about her identification of Gonzalez in the photo array of individuals with similar features, she was positive she had identified the correct person when she was able to see her in

person at the bench trial. Given the evidence presented at the bench trial, we do not conclude that Walker's positive identification of Gonzalez was inherently improbable.

## Conclusion

[13] We conclude that sufficient evidence was presented in support of Gonzalez's criminal mischief conviction. We also conclude that Walker's identification of Gonzalez from a photo array was not incredibly dubious.

[14] Affirmed.

Vaidik, C.J., and Crone, J., concur.