## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2016, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Noah L. Gambill
Wagner, Crawford, and Gambill
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Matter of H.M., a Child In Need of Services, | January 29, 2016 |
| A.A. (Mother), | Court of Appeals Case No. 84A04-1505-JC-355 |
| *Appellant-Respondent,* | Appeal from the Vigo Circuit Court |
| v. | The Honorable Daniel W. Kelly, Magistrate |
| The Indiana Department of Child Services, | The Honorable David Bolk, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 84C01-1409-JC-960 |

**Vaidik, Chief Judge.**

# Case Summary

A.A. (Mother) appeals the trial court's determination that her daughter H.M. is a child in need of services (CHINS). Mother's sole argument is that there is insufficient evidence to support the CHINS determination. We conclude, however, that there is sufficient evidence to support the adjudication, and Mother's argument is simply asking us to reweigh the evidence. This we cannot do. We therefore affirm the CHINS adjudication.

# Facts and Procedural History

In September 2014, fourteen-year-old H.M. wrote two letters to Mr. H., a school behavioral interventionist. The first letter alleged that Mother physically and verbally abused her, and the second letter alleged that Mother's forty-nine-year-old boyfriend (Boyfriend) had been sexually abusing her since she was thirteen.

Shortly thereafter, Department of Child Services Family Case Manager Sarah Schroeder interviewed H.M. During the interview, Schroeder and H.M. discussed the difference between a truth and a lie as well as the consequences of not telling the truth. H.M. told Schroeder that the sexual abuse began when she was thirteen years old and occurred more than twenty times while her mother was at work. Boyfriend offered her candy and other objects to engage in sexual intercourse with him. He was on top and failed to stop when she asked him to do so. Boyfriend wore condoms, which he flushed down the toilet. Schroeder

transported H.M. to a nearby hospital for a sexual abuse examination, which revealed no visible signs of trauma or injury.

[4] The juvenile court issued a detention order and H.M. was taken into protective custody. After assessing the case, DCS substantiated the abuse and filed a petition in September 2014 alleging that H.M. was a CHINS.[1] In March 2015, H.M. wrote a letter to a DCS case manager wherein she explained that she had "fibbed" about what Boyfriend had done to her because she was mad at him and her mother. Resp. Ex. 1. She apologized and explained that she wanted to go back home and to school because she missed her friends and teachers.

[5] In April 2015, H.M. told forensic investigator Trisha Guinn that she began having sexual intercourse with Boyfriend when she was thirteen years old. The intercourse occurred in the bedroom that he shared with Mother. She further told the investigator that Boyfriend wore condoms. H.M. gave details about the bedding and explained that the intercourse occurred when Mother was at work.

[6] At the April 14, 2015, fact finding hearing, H.M. testified that Boyfriend began sexually abusing her when she was in the sixth grade. He took condoms out of the bottom drawer in a dresser on the left side of the bed he shared with Mother. According to H.M., she had not been home since she raised the allegations against Boyfriend, and she would not feel safe if she returned home.

---

[1] Mother has failed to include the CHINS petition in her appellant's appendix.

She also explained that Mother pressured her to write the "fib" letter. Resp. Ex. 1.

[7] H.M.'s older brother testified that H.M. is mean and stated that she would do something to get Mother and Boyfriend "in trouble" because Mother grounded her. Trans. p. 39. Mother testified that Boyfriend is allergic to condoms and was working while Mother was working. She subsequently conceded that Boyfriend was home alone with H.M. on several occasions while Mother was at work. Mother also testified that she believed that H.M. fabricated the abuse allegations because she was angry that Mother had grounded her.

[8] The juvenile court found as follows:

> That the child, [H.M.], testified and maintained that [Boyfriend] had been sexually molesting her since she was 13 years old. The Court found the child to be a credible witness.
>
> Mother, [A.A.], does not believe her daughter and believes that she is trying to get mother, in trouble, which the Court finds not to be a credible argument, and the Court does not find that [Mother] would protect the child.

Appellant's App. p. 8. The juvenile court then adjudicated H.M. to be a CHINS. Specifically, the juvenile court concluded that H.M. was a CHINS "in that her physical and mental conditions are seriously endangered due to the neglect of her parent(s) to supply her with the necessary food, clothing, shelter, medical care, education or supervision and her environment being life and

health endangering and in that the child is a victim of a sex offense under: IC 35-42-4-3." Appellant's App. p. 7. Mother appeals the adjudication.

# Discussion and Decision

[9] At the outset, we note that because Mother's appendix does not include a copy of the CHINS petition, we do not know whether the petition included Mother's alleged physical abuse of H.M. as a basis for the CHINS adjudication. In any case, the trial court based the CHINS adjudication on the determination that Boyfriend sexually abused H.M. It is this determination that we therefore review.

[10] Indiana courts recognize a parent's fundamental right to raise her child without undue influence from the State, but that right is limited by the State's compelling interest in protecting the welfare of children. *In re Ju.L.*, 952 N.E.2d 771, 776 (Ind. Ct. App. 2011). A CHINS proceeding is a civil action in which the State must prove by a preponderance of the evidence that a child meets the statutory definition of CHINS. *In re N.E.,* 919 N.E.2d 102, 105 (Ind. 2010). To do so, Indiana Code section 31-34-1-1 requires the State to prove that the child is under age eighteen, the parent's actions or inactions have seriously endangered the child, the child's needs are unmet, and those needs are unlikely to be met without State coercion. In addition, Indiana Code section 31-34-1-3 provides as follows:

> A child is a child in need of services if, before the child becomes eighteen (18) years of age: (1) the child is the victim of a sex

offense under [(C) IC 35-42-4-3] . . . and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[11] When reviewing a trial court's determination that a child is in need of services, we do not reweigh the evidence or judge the credibility of the witnesses. *In re S.D.*, 2 N.E.3d 1283, 1286 (Ind. 2014). We consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.* at 1287. Where, as here, the trial court issues findings and conclusions sua sponte, we must determine whether the evidence supports the findings and whether the findings support the judgment. *Id.*

[12] Here, Mother's sole argument is that there is insufficient evidence to support the CHINS adjudication. Specifically, she contends that there is insufficient evidence that H.M. was a victim of a sex offense and directs us to facts in the transcript that support her contention. However, our review of the evidence reveals that H.M. testified that Boyfriend began sexually abusing her when she was thirteen years old. H.M. provided specific details about the abuse, including that it occurred in Boyfriend and Mother's bed when Mother was at work, and Boyfriend wore a condom that he took out of a bottom dresser drawer next to the bed and later flushed down the toilet. This evidence supports the trial court's finding that the sexual abuse occurred. Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of the witnesses, which we cannot and will not do. *See S.D.*, 2

N.E.3d at 1286.[2]  Because the evidence supports the juvenile court's findings,

we affirm the CHINS determination.

Bailey, J., and Crone, J., concur.

---

[2] To the extent Mother asks us to apply the incredible dubiosity rule to this case, we note that this rule applies only in very narrow circumstances. *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002).  Specifically, the rule applies only where a single witness presents inherently contradictory testimony that is equivocal or the result of coercion, and there is a total lack of circumstantial evidence of the defendant's guilt. *Thompson v. State,* 765 N.E.2d 1273, 1274 (Ind. 2002).  By its nature, therefore, the incredible dubiosity rule applies in criminal cases. A CHINS proceeding is a civil action. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012).  Because we have found no CHINS case applying the rule, we decline to do so here.  We further note that even if we were to find that the rule applies in CHINS cases, we would not find H.M.'s testimony to be incredibly dubious.  This is because H.M.'s testimony was neither equivocal nor contradictory.  Further, H.M.'s testimony that she had sexual intercourse with Boyfriend in the bed he shared with Mother while Mother was at work is not inherently improbable.  In light of the character of H.M.'s testimony, we would not impinge on the juvenile court's assessment of H.M.'s credibility.